## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **WALLACE BROWN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **FORDYCE CONCRETE COMPANY,** | ) | |
| **INC.** | ) | |
| *Serve Registered Agent:* | ) | |
| Corporation Service Company | ) | Case No. _____ |
| 2900 SW Wanamaker Drive, Suite 204 | ) | |
| Topeka, Kansas 66614 | ) | **REQUEST FOR JURY TRIAL** |
| | ) | |
| and | ) | |
| | ) | |
| **ASH GROVE MATERIALS CORP.,** | ) | |
| *Serve Registered Agent:* | ) | |
| Corporation Service Company | ) | |
| 2900 SW Wanamaker Drive, Suite 204 | ) | |
| Topeka, Kansas 66614 | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT FOR DAMAGES

COMES NOW, Wallace Brown ("Plaintiff"), by and through his attorneys and for his cause of action against Fordyce Concrete Company, Inc. ("Defendant Fordyce"), and Ash Grove Materials Corp. ("Defendant Ash Grove") (collectively "Defendants"), and alleges as follows for his cause of action:

### Parties and Jurisdiction

1. Plaintiff Wallace Brown ("Plaintiff") is a citizen of the United States, residing in Lee's Summit, Missouri.

2. Defendant Fordyce is and was at all relevant times a For Profit Corporation organized under the laws of Kansas. Defendant Fordyce is and was at all relevant times authorized to conduct business in the State of Kansas and was doing business in the State of Kansas.

3. Defendant Fordyce conducts substantial and continuous business in the State of Kansas.

4. Defendant Ash Grove is and was at all relevant times a Foreign for Profit Corporation organized under the laws of Delaware. Defendant Ash Grove Materials Corp. is and was at all relevant times authorized to conduct business in the State of Kansas and was doing business in the State of Kansas.

5. Defendant Ash Grove conducts substantial and continuous business in the State of Kansas.

6. At all relevant times, Defendants jointly maintained and operated a place of business located at 211 Central Avenue, Kansas City, Kansas 66118.

7. Upon information and belief, Defendants are joint and/or single employers of Plaintiff with substantial interrelation of operations, and common ownership and/or financial control.

8. Defendants are entities that act through their agents. They are liable for the conduct of their agents that they knowingly ratify, injuries caused by agents' performance of their non-delegable duties, acts done by agents for which the agency relationship allows or assists the agent to perform, and acts taken by their agents by virtue of their position with Defendants.

9. This is an employment case based upon and arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("§1981"), the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), and the Americans with Disabilities Act ("ADAAA"), as amended in 2008, 42 U.S.C. § 12101 *et seq*.

10. Plaintiff was an employee of Defendant Fordyce within the meaning of Title VII, §1981, the FMLA, and the ADAAA.

11. Defendants are employers within the meaning of Title VII, 42 U.S.C. § 2000e(b), §1981, the FMLA, 29 U.S.C. § 2611(4), and the ADAAA, 42 U.S.C. § 12111(5)(A).

12. Jurisdiction is proper in the District of Kansas pursuant to 28 U.S.C. § 1331, as some or all of Plaintiff's claims arise under the laws of the United States.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the alleged discriminatory and retaliatory conduct occurred in this District.

## Administrative Procedures

14. On or about January 14th, 2021, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination, disability discrimination, and retaliation (attached as Exhibit 1 and incorporated herein by reference).

15. On or about January 13, 2022, and January 25, 2022, the EEOC issued to a Plaintiff a Notice of Right to Sue (attached as Exhibits 2, 3, and 4, and incorporated herein by reference), and this lawsuit was filed within ninety (90) days of the issuance of the Notice of Right to Sue.

16. The aforesaid Charge of Discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be as broad as the scope of a MCHR or EEOC investigation, which could reasonably be expected to have grown out of the Charge of Discrimination.

17. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action and it has been filed within the requisite statute of limitations.

## General Allegations Common to All Counts

18. Plaintiff (black) was hired to work for Defendants in approximately July 2019 as a Truck Driver at Defendants' location at 211 Central Avenue, Kansas City, Kansas 66118.

19. In approximately September 2020, Truck Driver Doug [Last Name Unknown] ("LNU") ("Driver Doug") (white) said to Truck Driver Elijah [LNU] ("Driver Elijah") (black), "That nigger's been watching me all day, he's not going to allow me to put any water in his load", referring to another black employee.

20. Driver Elijah responded, "How could you say something like that? Don't you realize I'm black?"

21. Driver Doug responded that he was just making a statement, and Driver Elijah expressed that he was offended.

22. Driver Elijah reported Driver Doug's statement to Union Steward Scott Van Kam ("Steward Van Kam") (white).

23. In response, Steward Van Kam told Driver Elijah and Driver Doug to shake hands and agree that the situation had been resolved.

24. On or about September 21, 2020, Driver Elijah informed Plaintiff of the racial statement made by Driver Doug, that he reported it to Steward Van Kam, and that Steward Van Kam did nothing but make them shake hands.

25. Driver Elijah also informed Plaintiff that Truck Driver Evan [LNU] ("Driver Evan") reported to Steward Van Kam that Driver Doug had previously stated that he "dislikes niggers" and called Driver Evan a "nigger lover".

26. Shortly thereafter, Plaintiff spoke with Steward Van Kam and stated that he did not believe the situation with Driver Doug was handled properly.

27. Steward Van Kam responded, "[Plaintiff] you do not have a dog in that fight."

28. Plaintiff told Steward Van Kam that he was offended by Driver Doug's statements because he is black.

29. Steward Van Kam then stated that he understood what Plaintiff was saying "because he dates black girls."

30. Plaintiff responded that he was offended because he is a black man, and it is offensive to his race as a whole, not just the person the racial comments were said to.

31. Steward Van Kam just shook his head and said the situation was handled.

32. Shortly thereafter, Plaintiff went to his Supervisor Scott Dungan ("Supervisor Dungan") (white) and reported Driver Doug's racial statements and that it was creating a hostile work environment.

33. Supervisor Dungan responded that Plaintiff should give Driver Doug a second chance because he just made a mistake, and Plaintiff has made mistakes before, too.

34. Plaintiff told Supervisor Dungan that he had not displayed signs of hate.

35. Supervisor Dungan then responded, "I don't understand why you can say the 'n' word in raps but other people can't use it," and "I listen to Cardi B's song, 'Wet Ass Pussy.'"

36. Supervisor Dungan further stated that he thought the handshake was "good enough" and that Driver Elijah had accepted the handshake.

37. In response, Plaintiff stated that he thought Defendants had a zero-tolerance policy and that Driver Elijah was still offended.

38. Supervisor Dungan responded that the ball was in Plaintiff's court because Plaintiff was the one using words like "hostile environment" and "racial".

39. Plaintiff then reported Driver Doug's racial comments, as well as Supervisor Dungan's racial comments, to Human Resources Manager Katie Richardson ("HR Richardson") (white).

40. HR Richardson responded, "Well [Supervisor Dungan] shouldn't have said that but he's just old school."

41. In approximately October 2020, Plaintiff's co-workers began harassing him for making complaints of race discrimination.

42. On or about October 7, 2020, Truck Driver Jessie Pendleton ("Driver Pendleton") (white) posted on Facebook that Defendants have rats in their midst, and they needed to get together to get rid of the rat.

43. Notably, multiple of Defendants' employees liked this post, including Steward Van Kam.

44. On or about October 20, 2020, a co-worker put a dead raccoon in front of Plaintiff's truck.

45. Plaintiff was informed by Truck Driver Curt [LNU] ("Driver Curt") that "everyone was mad about what was going on with Steward Van Kam," and that Driver Curt would try to watch Plaintiff's truck for him.

46. Nevertheless, around the same time, an unknown co-worker defaced Plaintiff's truck with concrete and mud.

47. Plaintiff reported the social media post, the raccoon, and the concrete and mud on his truck to HR Richardson.

48. Specifically, Plaintiff reported to HR Richardson, "I believe that this was racially motivated because I informed HR of the racism that was going on in [Defendants'] environment… Regarding those conditions, I feel as if there has been a more hostile environment created amongst my fellow employees and management causing stress, feeling unsafe, and unsure of my employer's next actions towards me."

49. Plaintiff further reported to HR Richardson, "I have experienced intimidation, increased work scrutiny, retaliation, and now overt, racist threats to my person in the form of dead raccoons being both a symbol of violence and a long tradition of African American dehumanizing in the form of the 'coon' epithet."

50. Plaintiff also informed HR Richardson that he needed to take time off due to the stress and anxiety this was causing him and his family.

51. Additionally, Plaintiff reported the social media post, the raccoon, and the concrete and mud on his truck to Supervisor Dungan, who responded, "I asked you would you be able to handle everything that was going to come at you."

52. Shortly after Plaintiff's reports of retaliation, his co-workers began to ignore him and isolate him.

53. On or about November 10, 2020, Supervisor Dungan gave Plaintiff a write-up for excessive absenteeism.

54. When Plaintiff asked Supervisor Dungan why he was being written-up for missing approximately four (4) days when he was sick, Supervisor Dungan stated it was because Plaintiff was absent and the write-up was staying.

55. Plaintiff informed Supervisor Dungan that he had used his absences when he was either sick or had been exposed to COVID-19, which was what Defendants told all employees to do.

56. On or about November 17, 2020, Plaintiff filed a grievance with his union regarding the write-up for excessive absenteeism.

57. In his grievance, Plaintiff stated, "I feel that I am being retaliated against due to my recent concerns about racism in the workforce."

58. Later that same day, HR Richardson informed Plaintiff that a co-worker had made a complaint about him, but would not tell him who made the complaint or what the complaint was about.

59. On or about December 3, 2020, Plaintiff attended a grievance meeting with Defendants to discuss his write-up for excessive absenteeism.

60. During this meeting, Plaintiff reported Supervisor Dungan's statement, "I asked you would you be able to handle everything that was going to come at you."

61. In response, Supervisor Dungan stated that he felt "threatened" by Plaintiff.

62. On or about December 8, 2020, Plaintiff found out that he had been exposed to COVID-19 by a co-worker whose wife tested positive for COVID-19.

63. As a result, Plaintiff informed Defendants that he needed to get tested, as he had some symptoms of COVID-19.

64. Shortly thereafter, Plaintiff received a text from HR Richardson asking who he was exposed to.

65. When Plaintiff informed HR Richardson that he had been told he was exposed to a co-worker in Defendants' shop whose wife tested positive for COVID-19, HR Richardson responded, "You made assumptions without factual knowledge. Who told you there were positive exposures?"

66. On or about December 9, 2020, Plaintiff notified HR Richardson and Supervisor Dungan that he was not feeling well and going to get tested for COVID-19.

67. HR Richardson responded that Plaintiff was to quarantine for ten (10) days or until he received his test results.

68. Later that same day, Supervisor Dungan wrote Plaintiff up for allegedly not following COVID-19 protocol.

69. Plaintiff was tested for COVID-19 on or about December 10, 2020, and notified HR Richardson of his positive result on or about December 12, 2020.

70. On or about December 14, 2020, Plaintiff sent HR Richardson a copy of his COVID-19 test result, and reported that Supervisor Dungan wrote him up for allegedly not following COVID-19 protocol.

71. Additionally, Plaintiff reported to HR Richardson, "My only concern is that I would like to be treated as an equal employee of [Defendants]. This has all been overwhelming. I feel like I am fighting for my job every single day with these ridiculous write ups that clearly show that I am being retaliated against."

72. HR Richardson responded, "You are being treated equally and not being retaliated against."

73. While Plaintiff was still quarantining for COVID-19, on or about December 16, 2020, Plaintiff received a letter from Supervisor Dungan stating that Plaintiff was suspended pending further investigation of possible violations of company policies, effective on or about December 17, 2020.

74. When Plaintiff spoke with HR Richardson about the suspension, he was informed that he was suspended for alleged sexual harassment for telling a female co-worker her hair looked nice, giving a male co-worker a hug, and showing a co-worker his body building pictures approximately six (6) months prior during a discussion about health and wellness.

75. On or about December 22, 2020, Plaintiff had a meeting with Defendants to discuss the allegations against him.

76. During this meeting, when Plaintiff asked HR Richardson what evidence she had against him, HR Richardson responded that she felt like he was harassing her.

77. After the meeting on or about December 22, 2020, Plaintiff sent a formal written complaint to HR Richardson reporting Supervisor Dungan's race discrimination and retaliation.

78. In Plaintiff's complaint, he stated that he had previously informed HR Richardson of Supervisor Dungan's racial statements, and that the subsequent behavior he was subjected to "[came] about after [he] initiated action against racial injustice at [Defendants]."

79. Plaintiff then reported that he was unjustly targeted by the raccoon incident, threatening social media posts, defacing of his truck, and harassment by Supervisor Dungan.

80. Additionally, Plaintiff stated that he was suspended while quarantining with COVID-19, received several write-ups while at home with COVID-19, and he was being suspended while still on medical leave.

81. HR Richardson's only response to Plaintiff's complaint was that he was not on medical leave and that he had not applied for medical leave.

82. Plaintiff responded, "It may not be considered medical leave to you, but the doctor's orders told me to quarantine for 10 days and so did you according to your text message."

83. On or about December 23, 2020, Plaintiff was terminated for alleged violations of Defendants' policies.

## COUNT I
### Violation of 42 U.S.C. §§ 2000e et seq. (Title VII)
### Race Discrimination – Hostile Work Environment

84. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all the above numbered paragraphs.

85. Plaintiff is a member of a protected class under Title VII because he is black.

86. During Plaintiff's employment, Defendants, by and through their agents and employees, engaged in a pattern and practice of intentional discrimination and harassment of Plaintiff based on his race.

87. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

88. The harassment and discrimination had the purpose and effect of unreasonably interfering with Plaintiff's work performance, thereby creating an intimidating, hostile, and offensive working environment.

89. Defendants subjected Plaintiff to severe and pervasive race discrimination, including making derogatory racial comments and treating Plaintiff less favorably than white employees.

90. The actions and conduct of Defendants' employees and representatives acting within the course and scope of their employment created an intimidating, hostile, and offensive working environment and thereby detrimentally affected Plaintiff.

91. The conduct described herein would have offended a reasonable person of the same race in Plaintiff's position.

92. Management level employees of Defendants knew or should have known of the racial discrimination and harassment herein but failed to take appropriate action to address the discrimination, and further failed to implement effective and appropriate procedures to stop and remedy the racial discrimination and harassment.

93. By failing to conduct a prompt investigation of Plaintiff's allegations of race discrimination and harassment, Defendants exacerbated the discriminatory and hostile work environment to which Plaintiff was subjected.

94. Plaintiff's status as black was at least a motivating factor in the hostile work environment to which Defendants subjected Plaintiff.

95. Defendants failed to make good faith efforts to establish and enforce policies to prevent the discriminatory and hostile work environment against their employees, including race discrimination.

96. Defendants failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

97. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

98. By failing to take prompt and effective remedial action, Defendants, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

99. Defendants' conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other employers from like conduct in the future.

100. Pursuant to the provisions of Title VII, Plaintiff is entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgement in his favor and against Defendants for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as

allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT II
### Violation of 42 U.S.C. §§ 2000e et seq. (Title VII)
### Race Discrimination

101. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all the above numbered paragraphs.

102. Plaintiff is a member of a protected class under Title VII because he is black.

103. During his employment with Defendants, Plaintiff suffered several adverse actions including, but not limited to, write-ups and termination.

104. Plaintiff's race was at least a motivating factor in the adverse employment actions taken against him.

105. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior.*

106. Defendant failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against its employees.

107. As shown by the foregoing, as a result of his race, Plaintiff suffered intentional discrimination at the hands of Defendants in violation of Title VII.

108. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

109. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

110. By failing to take prompt and effective remedial action, Defendants, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

111. Defendants' conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other employers from like conduct in the future.

112. Pursuant to the provisions of Title VII, Plaintiff is entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgement in his favor and against Defendants for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

**<u>COUNT III</u>**
**Violation of 42 U.S.C. §§ 2000e *et seq.* (Title VII)**
**Retaliation**

113. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

114. Plaintiff engaged in a protected activity under Title VII by reporting what he believed in good faith to be race discrimination and/or racial harassment to Defendants.

115. Plaintiff suffered adverse employment actions as a result of his good faith report, including, but not limited to, write-ups and termination.

116. A causal connection existed between Plaintiff's good faith report of race discrimination and Defendants' decision to terminate Plaintiff's employment.

117. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendants; thus, making Defendants liable for said actions under the doctrine of *respondeat superior.*

118. Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against their employees, including retaliation.

119. Defendants failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

120. As shown by the foregoing, Plaintiff suffered intentional retaliation at the hands of Defendants, based on engaging in a protected activity, in violation of Title VII.

121. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

122. As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, garden variety emotional distress, and related compensatory damages.

123. By failing to take prompt and effective remedial action, Defendants, in effect, condoned, ratified, and/or authorized discrimination and retaliation against Plaintiff.

124. As shown by the foregoing, Defendants' conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter Defendants and other employers from like conduct in the future.

125. Plaintiff is entitled to recover from Defendants reasonable attorneys' fees as provided in Title VII.

WHEREFORE, Plaintiff requests that the Court enter judgement in his favor and against Defendants for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgement interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT IV
### Violation of 42 U.S.C. § 1981
### Race Discrimination – Hostile Work Environment

126. Plaintiff re-alleges and incorporate herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

127. Plaintiff is a member of a protected class because he is black.

128. During Plaintiff's employment, Defendants, by and through their agents and employees, engaged in a pattern and practice of intentional discrimination and harassment of Plaintiff based on his race.

129. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

130. The harassment and discrimination had the purpose and effect of unreasonably interfering with Plaintiff's work performance, thereby creating an intimidating, hostile, and offensive working environment.

131. Defendants subjected Plaintiff to severe and pervasive race discrimination, including making derogatory racial comments and treating him less favorably than white employees.

132. The actions and conduct of Defendants' employees and representatives acting within the course and scope of their employment created an intimidating, hostile, and offensive working environment and thereby detrimentally affected Plaintiff.

133. The conduct described herein would have offended a reasonable person of the same race in Plaintiff's position.

134. Management level employees of Defendants knew or should have known of the racial discrimination and harassment herein but failed to take appropriate action to address the discrimination, and further failed to implement effective and appropriate procedures to stop and remedy the racial discrimination and harassment.

135. By failing to conduct a prompt investigation of Plaintiff's allegations of race discrimination and harassment, Defendants exacerbated the discriminatory and hostile work environment to which Plaintiff was subjected.

136. Plaintiff's status as black was at least a motivating factor in the hostile work environment to which Defendants subjected Plaintiff.

137. Defendants failed to make good faith efforts to establish and enforce policies to prevent the discriminatory and hostile work environment against its employees, including race discrimination.

138. Defendants failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including §1981.

139. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived income, as well as other monetary and non-monetary benefits.

140. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

141. By failing to take prompt and effective remedial action, Defendants, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

142. Defendants' conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other employers from like conduct in the future.

143. Pursuant to the provisions of §1981, Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

WHEREFORE, Plaintiff requests that the Court enter judgement in his favor and against Defendants for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgement interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT V
### Violation of 42 U.S.C. §1981
### Race Discrimination

144. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

145. Plaintiff is a member of a protected class because he is black.

146. During his employment with Defendants, Plaintiff suffered several adverse actions including, but not limited to, write-ups and termination.

147. Plaintiff's race was at least a motivating factor in the adverse employment actions taken against him.

148. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior.*

149. Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against their employees, including race discrimination.

150. Defendants failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including §1981.

151. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

152. As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, garden variety emotional distress, and related compensatory damages.

153. Plaintiff is entitled to recover from Defendants reasonable attorneys' fees as provided in §1981.

154. As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other employers from like conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgement in his favor and against Defendants for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgement interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT VI
**Violation of 42 U.S.C. § 1981**
**Retaliation**

155. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

156. Plaintiff engaged in a protected activity under §1981 by making a report of what he believed in good faith to be race discrimination and/or racial harassment to Defendants.

157. Plaintiff suffered adverse employment actions as a result of his good faith report, including, but not limited to, write-ups and termination.

158. Plaintiff's reports of race discrimination and/or racial harassment were at least a motivating factor in Defendants' decision to write-up and terminate Plaintiff.

159. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior.*

160. Defendants failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including §1981.

161. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

162. As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, garden variety emotional distress, and related compensatory damages.

163. By failing to take prompt and effective remedial action, Defendants, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

164. Plaintiff is entitled to recover from Defendants reasonable attorneys' fees as provided in §1981.

165. As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other employers from like conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgement in his favor and against Defendants for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgement interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT VII
### FMLA Interference in Violation of 29 U.S.C. § 2615(a)(1)

166. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

167. By December 2020, Plaintiff was an eligible employee pursuant to the FMLA, and was accordingly entitled to take up to 12-weeks of leave under the FMLA for his own serious health condition.

168. Plaintiff provided Defendants with enough information about his COVID-19 condition and symptoms for Defendants to determine that the FMLA may apply to his absences and/or requests to be excused from work.

169. Accordingly, Plaintiff provided Defendants with adequate notice of his need for, and/or intent to take FMLA leave.

170. Rather than inquiring further to obtain additional information about whether Plaintiff needed or was seeking FMLA leave related to his own serious health condition, or providing Plaintiff with notice of his eligibility to take FMLA leave, Defendants instead wrote up and terminated Plaintiff's employment.

171. Accordingly, Defendants interfered with Plaintiff's exercise of benefits to which he was entitled under the FMLA. Defendants denied him FMLA benefits to which he was entitled.

172. Plaintiff was prejudiced by Defendant's interference with his exercise of FMLA rights, because Defendants terminated Plaintiff while he was absent due to his own serious health condition.

173. Defendants failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the laws, including the FMLA.

174. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

175. By failing to take prompt and effective remedial action, Defendants, in effect, condoned, ratified, and/or authorized the FMLA violation against Plaintiff.

176. As shown by the foregoing, Defendants' conduct was not in good faith, and Defendants did not have reasonable grounds for believing that the act or omission was not a violation of the FMLA.

177. Pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), Plaintiff is entitled to recover liquidated damages from Defendants.

178. Pursuant to 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgement in his favor and against Defendants for economic damages, including but not limited to back-pay, lost benefits; front-pay and liquidated damages; injunctive relief; reasonable attorneys' fees and costs incurred herein; pre- and post-judgement interest as allowed by law; and such other and further legal and equitable relief as the Court deems just and proper.

## COUNT VIII
### FMLA Retaliation in Violation of 29 U.S.C. § 2615(a)(1)

179. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

180. Plaintiff engaged in a protected activity by informing Defendants of his need to take leave for a qualified medical reason under the FMLA.

181. Plaintiff's need to take leave for a qualified medical reason under the FMLA was the determining factor in Defendants' decision to write-up and terminate Plaintiff.

182. Plaintiff suffered an adverse employment action when Defendants wrote him up on or about December 9, 2020, and terminated his employment on or about December 23, 2020.

183. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

184. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

185. By failing to take prompt and effective remedial action, Defendants, in effect, condoned, ratified, and/or authorized the FMLA violation against Plaintiff.

186. As shown by the foregoing, Defendants' conduct was not in good faith, and Defendants did not have reasonable grounds for believing that the act or omission was not a violation of the FMLA.

187. Pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), Plaintiff is entitled to recover liquidated damages from Defendants.

188. Pursuant to 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgement in his favor and against Defendants for economic damages, including but not limited to back-pay, lost benefits; front-pay liquidated damages; injunctive relief; reasonable attorneys' fees and costs incurred herein; pre- and post-judgement interest as allowed by law; and such other and further legal and equitable relief as the Court deems just and proper.

## COUNT IX
### Disability Discrimination in Violation of the ADAAA 42 U.S.C. §12101 et seq.

189. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

190. Plaintiff is disabled or was perceived as disabled pursuant to the ADAAA because he suffered from COVID-19. Also, Defendants regarded Plaintiff as having this disability and have a record of this disability; thus, Plaintiff is a member of a class of persons protected by the ADAAA.

191. Plaintiff's disability substantially affected several major life activities, including, but not limited to, major bodily functions such as his respiratory and lung functions, as well as his activities of breathing, working, and walking as described in the ADAAA.

192. Plaintiff could perform the essential functions of his job with or without reasonable accommodation.

193. Plaintiff's disability or perceived disability was a motivating factor in Defendants' decision to write-up Plaintiff and terminate Plaintiff's employment.

194. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendants, thus, making Defendants liable for said actions under the doctrine of *respondeat superior.*

195. Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against their employees.

196. Defendants failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including the ADAAA.

197. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendants, based on his disability or perceived disability, in violation of the ADAAA.

198. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

199. As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, mental anguish, and pain, in the form of garden variety emotional distress and related compensatory damages.

200. As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other employers from like conduct in the future.

201. Plaintiff is entitled to recover from Defendants reasonable attorneys' fees as provided in the ADAAA.

WHEREFORE, Plaintiff requests that the Court enter judgement in his favor and against Defendants for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgement interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## **Demand for Jury Trial**

Plaintiff requests a trial by jury, in the Circuit Court for the District of Kansas, on all counts and allegations of wrongful conduct alleged in this Petition.

Respectfully Submitted,

**CORNERSTONE LAW FIRM**

By:     */s/* Lauren H. Bridge
M. Katherine Paulus   D Kan 23866
m.paulus@cornerstonefirm.com
Lauren H. Bridge       D Kan 78917
l.bridge@cornerstonefirm.com
5821 NW 72nd Street
Kansas City, Missouri 64151
Telephone          (816) 581-4040
Facsimile          (816) 741-8889
**ATTORNEYS FOR PLAINTIFF**